**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0358n.06

No 13-3542

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 13, 2014
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| QUAVON PETERSON, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |
| | ) | |

**Before: MOORE and ROGERS, Circuit Judges, and NIXON, District Judge.**[*]

**JOHN T. NIXON, District Judge.** Quavon Peterson appeals from a jury conviction for possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He argues that, based on the evidence adduced at trial and specific circumstances of the case, the district judge committed reversible error in declining to amend the Sixth Circuit Pattern Jury Instruction on flight. We find insufficient support to reverse the conviction based on the jury instruction. Accordingly, we **AFFIRM**.

## I. BACKGROUND

Trial in this case commenced on December 13, 2012, and on December 14, 2012, the jury returned a guilty verdict, convicting Peterson of Count One of the Indictment, being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). R. 7 (Indictment) (Page ID #11–

---

[*]The Honorable John T. Nixon, United States District Judge for the Middle District of Tennessee, sitting by designation.

12); R. 30 (Jury Verdict) (Page ID #106). On April 15, 2013, the district court sentenced Peterson to fifty-four months of imprisonment followed by three years of supervised release, and ordered him to pay a $100 special assessment. R. 42 (Minutes of Sentencing) (Page ID #451–52). Peterson filed his notice of appeal on April 23, 2013. R. 46 (Notice of Appeal) (Page ID #467). He appeals the conviction based on the district court's refusal to include his proposed language—which would have supplemented Sixth Circuit Pattern Jury Instruction 7.14—in its instructions to the jury.

Peterson argues the "highly limited and circumstantial nature" of the prosecution's case and the "conflicting testimony about whether there actually was an attempt [by the defendant] to flee" compelled the district judge to instruct the jury specifically that evidence of a defendant's flight alone is not sufficient to establish guilt. (Appellant's Br. at 10).

The events at issue for trial in this case occurred on July 4, 2012, at approximately 1 a.m. R. 34 (Trial Tr. Vol. I at 22, 58–59) (Page ID #219, 255–56). Around that time, two Toledo Police Officers, Kevin Dumas and Neil Piasecki, were directed by a lieutenant to investigate an individual seated on the front porch of an uninhabited home on Fernwood Avenue in Toledo, Ohio. *Id.* at 20, 25–26 (Page ID #217, 222–23). The Officers were in uniform and in a "limited marked" Suburban with Officer Dumas driving and Officer Piasecki in the passenger seat. *Id.* at 25–26 (Page ID #222–23). Officer Dumas recalled at trial that the location on Fernwood Avenue was on his right, and viewed through his passenger side window. *Id.* at 27 (Page ID #224). Dumas testified that they were two houses away from the specified location when he observed an individual, later revealed to be Peterson, seated on the porch steps of the house. *Id.* at 27–28 (Page ID #224–25). Dumas also recalled that it was dark outside and there were no lights on the porch. *Id.* at 42 (Page ID #239). Despite this, Dumas testified that Peterson "caught site [sic] of

2

us. And when he saw us, there was that … shit and get look." *Id.* at 28 (Page ID #225). At that point, Dumas testified, Peterson made "a motion from his body with his right hand" and "reach[ed] towards the ground next to the stairs." *Id.* (Page ID #225). Piasecki later testified that he did not see this movement. *Id.* at 136 (Page ID #333). Further, Piasecki testified that Dumas did not alert Piasecki to the movement until after Peterson had been detained. *Id.* at 137 (Page ID #334).

Piasecki and Dumas both testified that Peterson then stood up and proceeded to walk towards the Suburban.[1] *Id.* at 32, 136 (Page ID #229, 333). Officer Scott Bailey, who was driving in a separate vehicle behind Dumas and Piasecki, testified that he observed Peterson get up and "start to, not sprint, but try to get out of that area very quickly." *Id.* at 60–61 (Page ID #257–58). Dumas testified that Piasecki then stopped Peterson, and that Dumas subsequently discovered a pistol next to the porch steps. *Id.* at 34–35 (Page ID #231–32). Peterson was arrested and indicted for violating 18 U.S.C. § 922(g)(1). R. 7 (Indictment) (Page ID #11–12).

## II. FLIGHT INSTRUCTION

After trial the district court issued the following written instruction to the jury on "fleeing the scene";

> You have heard testimony that Defendant fled from officers. If you believe Defendant fled, then you may consider this conduct, along with all the other evidence, in deciding whether the Government has proved beyond a reasonable doubt that Defendant committed the crime charged. This conduct may indicate that Defendant thought he was guilty and was trying to avoid punishment. On the other hand, an innocent person may flee for some other reason.

---

[1] Although Dumas did not testify that Peterson was running, the Government asked at trial "what direction did the individual on the stoop run?" *id.* at 32 (Page ID #229), which Peterson argues created an undue impression of flight. (Appellant's Br. at 7.)

R. 27-1 (Jury Instructions at 12) (Page ID #102). The Court also read this instruction. R. 35 (Trial Tr. Vol. II at 31) (Page ID # 373).[2] The above is the same language as Sixth Circuit Pattern Jury Instruction 7.14.

Peterson had objected to this instruction prior to trial, *see* R. 52 (Mtn to Enlarge the Record at 2, 5) (Page ID #489, 492), and renewed the objection at trial, R. 35 (Trial Tr. Vol. II at 17) (Page ID #359). Peterson requested that the court amend the instruction to include the following language: "The intentional flight of a defendant is not of course sufficient in itself to establish his guilt; but it is a fact which, if proved, may be considered in light of all other evidence in the case in determining guilt or innocence." R. 52 (Mtn to Enlarge the Record at 5) (Page ID #492). Peterson's proposed language came from the commentary to Sixth Circuit Pattern Jury Instruction 7.14, and *United State v. Touchstone*, 726 F.2d 1116, 1119 (6th Cir. 1984), which preceded the adoption of the pattern instruction. The district court declined to amend the pattern instruction, stating that the pattern instruction "take[s] into account the comment" and "tracks, if not the letter, the spirit" of *Touchstone.* R. 35 (Trial Tr. Vol. II at 35) (Page ID #359).

Peterson's appeal is based on the district court's rejection of his proposed amendment to the instruction. He argues that the amendment was necessary due to the circumstantial nature of the evidence in the case, and the inconsistent observations of the Officers as to whether Peterson had made a movement near his waist while he was on the porch. He appears to argue further that the evidence presented failed to "clearly indicate" that he fled at all, thus making the mere inclusion of a flight instruction inherently prejudicial.[3] (Appellant's Br. at 14–16.)

---

[2] The trial transcript reads "term" instead of "testimony," and it is unclear whether this was an error in the dictation or the transcription.
[3] Peterson did not object to the instruction on this basis prior to or at trial.

Challenges to jury instructions that were objected to at trial are reviewed on appeal under the abuse of discretion standard. *United States v. Williams*, 612 F.3d 500, 506 (6th Cir. 2010). We assess district court jury instructions to determine whether, taken as a whole, they "adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision," and reverse only where, as a whole, they were "confusing, misleading, or prejudicial." *United States v. Russell,* 595 F.3d 633, 642 (6th Cir. 2010) (quoting *United States v. Frederick,* 406 F.3d 754, 761 (6th Cir. 2005)). Whether jury instructions are identical to or track the essential language of Sixth Circuit Pattern Jury Instructions is one factor in determining if the provided instructions are misleading or plainly erroneous. *E.g.*, *United States v. Damra*, 621 F.3d 474, 499–500 (6th Cir. 2010); *United States v. Hines,* 398 F.3d 713, 718 (6th Cir. 2005).

Peterson provides no authority that requires a district court to amend pattern instructions because evidence is in dispute or not fully corroborated by all witnesses. Peterson's only support for reversal based on the submission of a flight instruction to the jury, where there was insufficient evidence of flight at trial, is that this Court and the Supreme Court have expressed concern as to the probative value of flight evidence with respect to guilt. Appellant's Br. at 14–15 (citing *United State v. Dillon*, 870 F.2d 1125, 1126 (6th Cir. 1989) and *Wong Sun v. United States*, 371 U.S. 471, 483 n.10 (1963)). However, while these cases support the contention that flight may not be indicative of guilt, the submitted jury instruction adequately takes this into account by stating that an "innocent person may flee for some other reason."[4] Evidence submitted to the jury in this case concerning flight was admittedly thin; however, Officers Dumas and Bailey both testified that they sensed that Peterson was moving to get away from the

---

[4] This language could be improved to the extent that there would be no suggestion that a defendant has any burden to prove that he fled for an innocent reason, but we agree with the district court that the instruction, in this case, sufficiently reflected the "spirit" of *Touchstone*.

porch. R. 34 (Trial Tr. Vol. I at 27–28, 61) (Page ID #224-225, 258). Accordingly, as evidence of flight was introduced at trial, the determination of the credibility of the officers and the truth of their statements is clearly within the province of the jury. This Court cannot re-weigh the evidence, judge the credibility of the witnesses, or substitute its judgment for that of the jury. *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007).

Finally, even assuming *arguendo* that no flight evidence was presented, the instruction clearly provided that the jury was not required to accept the Government's evidence that Peterson fled. *See United States v. Mari*, 47 F.3d 782, 785–87 (6th Cir. 1995) (acknowledging that jurors are not generally equipped to determine whether a theory of conviction is contrary to the law, but affirming jurors' ability to discard factually inadequate theories of conviction). Here, the instruction on flight made clear to the jury that *if* they "believe" that Peterson fled they *may* "consider this conduct, along with all other evidence," thus ensuring that the jury was not compelled to find that Peterson fled, and further that a finding on flight would not be singularly determinative on the issue of guilt. Accordingly, the district court did not abuse its discretion in declining to amend the jury instruction on flight in this case.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Peterson's conviction for being a felon in possession of a firearm.